JUSTICE O’HARA FROSSARD, specially concurring: I write to emphasize that whether a statement is testimonial in nature cannot be answered in a vacuum, but requires examination of the totality of the circumstances surrounding the statement. I further emphasize, as recognized by this opinion, not all statements made to a DCFS investigator or social worker are per se inadmissible testimonial evidence under Crawford. As noted by the opinion, section 115 — 10 allows the testimony of those who heard a child’s statement describing any complaint, matter, or detail pertaining to the criminal offense regardless of the testimonial nature of the child’s statement. Section 115 — 10 was designed to address the difficulties inherent in prosecuting cases involving child victims. However, such prosecutions are now required to be undertaken consistent with the Crawford limitations as articulated by the United States Supreme Court. Those limitations will impact application of section 115 — 10 in cases involving child victims. The Crawford decision significantly changed the application of the sixth amendment’s confrontation clause and the relationship of that clause to various rules of evidence regarding hearsay and hearsay exceptions. Under Crawford, the sixth amendment’s confrontation clause precludes the use of a “testimonial” statement made by a witness who does not testify at a criminal trial, unless the witness is unavailable to testify at trial and was previously subjected to cross-examination. Crawford, 541 U.S. at 67-68, 158 L. Ed. 2d at 202-03, 124 S. Ct. at 1373-74. However, where the statement is not “testimonial” in nature, the confrontation clause is not implicated and the statement’s admissibility is determined by applying evidentiary hearsay rules and various hearsay exceptions. Crawford, 541 U.S. at 67-68, 158 L. Ed. 2d at 202-03, 124 S. Ct. at 1373-74. In the instant case, application of section 115 — 10 conflicts with the holding in Crawford. Crawford recognized that such a conflict could occur but, as to nontestimonial evidence, concluded that the states are entitled to determine the admissibility of statements consistent with the hearsay rules and hearsay exceptions. Crawford, 541 U.S. at 67-68, 158 L. Ed. 2d at 203, 125 S. Ct. at 1374. Regarding the admissibility of testimonial evidence, Crawford requires adherence to the demands imposed by the sixth amendment as indicated by the following: “Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination. We leave for another day any effort to spell out a comprehensive definition of ‘testimonial.’ ” Crawford, 541 U.S. at 68, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374. While Crawford did not provide a comprehensive definition of “testimonial,” it did recognize the following: “Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed.” Crawford, 541 U.S. at 68, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374. Chief Justice Rehnquist’s concurring opinion in Crawford criticizes the majority opinion for failing to provide a more comprehensive definition of a testimonial statement: “[T]housands of federal prosecutors and *** tens of thousands of state prosecutors need answers as to what beyond the specific kinds of ‘testimony’ the Court lists *** is covered by the new rule. They need them now, not months or years from now. Rules of criminal evidence are applied every day in courts throughout the country, and parties should not be left in the dark in this manner.” Crawford, 541 U.S. at 75-76, 158 L. Ed. 2d at 207-08, 124 S. Ct. at 1378 (Rehnquist, C.J., concurring, joined by O’Connor, J.). The instant case underscores the significance of the concerns expressed by the Chief Justice. Crawford requires testimonial evidence of an unavailable witness to be previously subjected to cross-examination as a prerequisite for admissibility. Section 115 — 10 requires the statement to provide sufficient safeguards of reliability but, contrary to Crawford, does not require previous cross-examination of the testimonial evidence as a prerequisite for admissibility. In Illinois there are hundreds of cases every year involving child victims where a child makes statements to investigators, DCFS workers, and medical personnel relied upon by the State to prosecute the alleged offender. Those statements are seldom, if ever, previously subjected to cross-examination as now required under the Crawford standards for admissibility. The case law and the legal literature reflect that most often child victims, due to their tender years, are unavailable to testify at trial. The problem presented by child victims of crime who are unavailable to testify due to their tender age was resolved by section 115 — 10, which allows in evidence children’s statements to investigators, DCFS workers, or medical personnel, without prior cross-examination, providing they are found reliable by a judge in a pretrial hearing. That approach was specifically rejected in Crawford: “Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation.” Crawford, 541 U.S. at 61, 158 L. Ed. 2d at 199, 124 S. Ct. at 1370. Under Crawford, if the unavailable child’s statement is testimonial, then the statement is inadmissible unless the statement was previously cross-examined. Since Crawford was decided on March 8, 2004, a small number of cases from other states have attempted to provide a definition of a testimonial statement. In People v. Moscat, 3 Misc. 3d 739, 777 N.Y.S.2d 875 (2004), the court found that “[a] testimonial statement is produced when the government summons a citizen to be a witness.” Moscat, 3 Misc. 3d at 745, 777 N.Y.S.2d at 879. In support of that definition, the court in Moscat noted that a “person who gives a formal statement, or deposition, or affidavit is conscious that he is bearing witness, and that his words will impact further legal proceedings.” Moscat, 3 Misc. 3d at 746, 777 N.Y.S.2d at 880. In People v. Sisavath, 118 Cal. App. 4th 1396, 13 Cal. Rptr. 3d 753 (2004), the court found a statement given by a victim to an investigating officer to be testimonial as it was given knowingly in response to structured police questioning. Sisavath, 118 Cal. App. 4th at 1402, 13 Cal. Rptr. 3d at 758. Sisavath further found a victim’s statement to a forensic interview specialist to be testimonial. The court noted that the victim’s statement was made under circumstances which would lead an objective witness reasonably to believe the statement would be used at trial. Sisavath, 118 Cal. App. 4th at 1403, 13 Cal. Rptr. 3d at 785. Similarly, in Snowden v. State, 156 Md. App. 139, 846 A.2d 36 (2004), the court found statements by the children victims to social workers were “testimonial” and their admission in evidence violated defendant’s sixth amendment right to confrontation. In support of that finding, the court in Snowden noted that the children were interviewed by a social worker for the express purpose of developing their testimony for trial. Snowden, 156 Md. App. at 157, 846 A.2d at 47. The critical question regarding G.F.’s statements to DCFS investigator Lewis is whether those statements were testimonial. DCFS is a legislatively created agency responsible for protecting and promoting the welfare of the children of Illinois. In re C.J., 166 Ill. 2d 264, 268 (1995). Crimes against children implicate both criminal and social welfare concerns. DCFS and the State’s Attorney may share involvement in cases involving child victims; however, that factor does not render all statements made to a DCFS investigator per se testimonial under Crawford. The question of whether a statement made by a child is testimonial in nature cannot be answered in a vacuum, but requires examination of the totality of the circumstances surrounding the statement. Whether G.F.’s statement is testimonial requires a close examination of the testimony provided by DCFS investigator Lewis and the totality of the circumstances surrounding the statement. Lewis testified that she was an investigator with the division of child protection for DCFS. She was conducting “an investigation of child sex abuse with the victim by the name of G.F.” She received the initial report in March of 2001, but first spoke to G.F. on May 4, 2001. After introducing herself she testified that she “asked several questions in order to do what we call qualify her as a victim — an alleged victim.” That testimony by DCFS investigator Lewis could be considered as demonstrating the involvement of a government officer in the production of testimony with an eye toward trial. In reviewing such testimony which had not been previously subjected to cross-examination, Crawford noted “Involvement of government officers in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse ***.” Crawford, 541 U.S. at 56 n.7, 158 L. Ed. 2d at 196 n.7, 124 S. Ct. at 1367 n.7. In the instant case, after Lewis found that G.E understood the difference between telling the truth and telling a lie, G.E. spoke to DCFS investigator Lewis in detail about the incident involving the minor-respondent T.T. The substance of the information provided by G.F. in her conversation with DCFS investigator Lewis reflected that the declarant G.F. was bearing witness against the minor-respondent and that information was generated with an eye toward prosecution. Due to the tender age of G.F., she may not have fully appreciated the fact that she was bearing witness against the minor-respondent. That fact is not particularly significant because Crawford has indicated that the perception of the witness can only be revealed by cross-examination. Crawford, 541 U.S. at 66, 158 L. Ed. 2d at 202, 124 S. Ct. at 1373. As previously noted, G.F. was never cross-examined. Based on the totality of the circumstances, the statements made by G.F. to DCFS investigator Lewis were testimonial. A review of the testimony provided by DCFS investigator Lewis together with the totality of the circumstances in the context of the confrontation clause analysis articulated by Crawford demonstrated that G.F.’s statements to DCFS investigator Lewis were inadmissible testimonial evidence. However, as recognized by this opinion, not all information provided to DCFS is per se inadmissible testimonial evidence under Crawford. In Moscat, 3 Misc. 3d at 746, 777 N.Y.S.2d at 875, the 911 call of a domestic violence victim who did not testify was found to be admissible. The court rejected the defendant’s argument that such a call was testimonial under Crawford, recognizing that such a call is the “electronically augmented equivalent of a loud cry for help.” Moscat, 3 Misc. 3d at 746, 777 N.Y.S.2d at 880. A report to the DCFS hotline may not necessarily implicate testimonial concerns under the Crawford confrontation clause analysis. The Crawford confrontation clause analysis should not undermine the admission of a cry for help by a child victim when such a cry does not qualify as testimonial. Where nontestimonial evidence is at issue, it is consistent with the purpose of the United States Constitution to exempt such statements from confrontation clause scrutiny and “afford the States flexibility in their development of hearsay law.” Crawford, 541 U.S. at 68, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374. The holding of the instant case should be narrowly construed in the context of the facts presented and the principles articulated in Crawford.